IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTIAN N. DAVIS, | § | |
| #13608-045, | § | |
|       Petitioner, | § | |
| | § | |
| v. | § | No. 3:22-cv-01410-L (BT) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|       Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Christian N. Davis, a prisoner at FCI Seagoville, filed a *pro se* petition

for a writ of habeas corpus under 28 U.S.C. § 2241. As explained below, Davis

is not entitled to the relief he seeks. Therefore, the Court should dismiss or

deny his petition.

**Background**

In 1993, Davis—who at the time was an active-duty member of the

United States Army—was convicted at a general court-martial of numerous

criminal offenses.[1] App. 6-7 (ECF No. 13). He was sentenced to life in prison,

with the possibility of parole, and dishonorably discharged. *Id.* 7. Davis later

---

[1] In May 1987, Davis set fire to his mobile home in Fort Polk, Louisiana,
while his wife was inside. App. 10 (ECF No. 13). His wife survived the fire.
*Id.* However, in 1991, Davis conspired with a woman with whom he was in
an adulterous relationship to shoot his wife and make it look like a suicide.
*Id.* Davis's wife was pregnant at the time of her death. *Id.* Following his
court-martial, Davis was convicted of attempted premeditated murder,
conspiracy to commit murder, premeditated murder, arson, and adultery,
among other offenses. *Id.* 6-7, 9.

applied for clemency with the Army Clemency and Parole Board, but his application was denied. *Id*. at 21-22.

In 2002, the United States Parole Commission (USPC) gave Davis a "presumptive parole date" of May 21, 2016.[2] *Id*. at 23-24. But in September 2015, the USPC reopened the parole decision and conducted a "special reconsideration hearing to consider new adverse information." *Id*. at 25; *see also* 28 C.F.R. § 2.28(f). Thereafter, the USPC rescinded Davis's presumptive parole date and ordered him to serve the remainder of his life sentence while having his parole reviewed every 15 years, *see* 28 C.F.R. § 2.14(c), unless he had served 30 years of his life sentence prior to his next 15-year reconsideration hearing, *see* 18 U.S.C. § 4206(d) (repealed).[3] App.

---

[2] The Uniform Code of Military Justice (UCMJ) provides that "a sentence of confinement adjudged by a court-martial . . . may be carried into execution by confinement . . . in any penal or correctional institution under the control of the United States." 10 U.S.C. § 858(a). The UCMJ further provides that prisoners who are transferred to federal Bureau of Prisons (BOP) facilities must be treated the same as non-military prisoners incarcerated in the same facility. *Id*. Thus, military prisoners confined in federal prison facilities—like Davis—are subject to BOP rules, including the rules concerning parole consideration. *See Artis v. U.S. Dep't of Justice*, 166 F. Supp. 2d 126, 130 (D. N.J. 2001). Although the Sentencing Reform Act of 1984, Pub. L. No. 98–473, 98 Stat. 1987 (Oct. 12, 1984), abolished parole and replaced it with supervised release, prisoners who committed their offense of conviction prior to November 1, 1987, remain eligible for parole under the pre-Sentencing Reform Act system. *Terrell v. United States*, 564 F.3d 442, 444 (6th Cir. 2009). Davis committed arson and attempted premeditated murder in May 1987. App. 10 (ECF No. 13).

[3] Davis would also remain eligible for a statutory interim hearing every 24 months to determine whether there had been a substantial change in his record that would advance his 15-year reconsideration hearing. *See* 18 U.S.C. § 4208(h)(2) (repealed).

26 (ECF No. 13). In its decision, the USPC explained that "[the] new information [was] significant because it not only directly contradict[ed] [Davis's] claim of innocence, but also demonstrate[d] [his] lack of remorse, lack of empathy for the victims of [his] crimes, and [his] lack of acceptance of responsibility for [his] actions." *Id.* at 26-27. Davis administratively appealed the USPC's decision to rescind his presumptive parole date, but the National Appeals Board affirmed the USPC's decision. *Id.* at 32-33.

In September 2021, Davis applied for his latest parole hearing with the USPC. *Id.* at 34-35. The USPC conducted the hearing on February 4, 2022, pursuant to 18 U.S.C. § 4206(d) because Davis had served almost 30 years of his life sentence. *Id.* at 58-59; *see also* Pet. 56-57 (ECF No. 3); 18 U.S.C. § 4206(d) (repealed). Following the hearing, the USPC denied Davis's request for parole. App. 56-57 (ECF No. 13). Davis administratively appealed the USPC's decision. *Id.* at 58-84. The USPC's National Appeals Board denied his appeal. *Id.* at 80-82.

Davis then commenced this action asking for "compassionate release" under 18 U.S.C. § 3582(c)(1)(A)(i), 28 U.S.C. § 1651, and 28 U.S.C. § 2241. Pet. (ECF No. 3). In his filings, he argues that he has been "unjustly" denied parole and he is entitled to release because (i) he has engaged in many rehabilitation efforts, (ii) he suffers from health issues; (iii) his convictions were based solely on circumstantial evidence; and (iv) he may be innocent of the criminal offenses of which he was convicted. *Id.* at 2, 4, 8-11, 12-13,

16-41, 53-55. Davis further argues that if he is released, he plans to live a quiet life with his brother in Superior, Montana. *Id.* at 11, 52 (including a letter from Davis's brother regarding the plan for Davis to be released to his home).

## Legal Standards

A federal district court has jurisdiction under 28 U.S.C. § 2241 over a habeas application from a person held in custody under a military conviction. *Fletcher v. Outlaw*, 578 F.3d 274, 276 (5th Cir. 2009) (citing *Burns v. Wilson*, 346 U.S. 137, 139 (1953)). But in a military habeas corpus determination, the scope of matters addressed by the federal district court is narrow. *Burns*, 346 U.S. at 139; *Fletcher*, 578 F.3d at 276. The court's review is limited to determining whether the military court gave full and fair consideration to the claims, and the court is precluded from simply reevaluating the evidence before the military court. *Burns*, 346 U.S. at 142, 144; *see also Calley v. Callaway*, 519 F.2d 184, 199 (5th Cir. 1975). In the Fifth Circuit, the review of a military conviction is proper when: (1) the claim is of "substantial constitutional dimension;" (2) the issue is legal rather than one involving a disputed fact determined by a military tribunal; (3) there are no military considerations that warrant different treatment of constitutional claims; and (4) the military court failed to give proper consideration to the issues involved, or it failed to apply the proper legal standards. *See Calley*, 519 F.2d at 199-203. A petitioner bears the burden of demonstrating that the

military review was legally inadequate to resolve his claims. *Fletcher*, 578 F.3d at 277 (citing *Burns*, 346 U.S. at 146). When a petitioner convicted in a military court raises a habeas claim that was not raised at trial or on appeal, he must show cause for his failure to raise the claim earlier and prejudice from the error to avoid procedural default of the claim. *Lips v. Commandant, U.S. Disciplinary Barracks*, 997 F.2d 808, 812 (10th Cir.1993) (citing *Murray v. Carrier*, 477 U.S. 478, 491 (1986)); *see also Fletcher*, 578 F.3d at 276-77; *Ruiz v. Warden, FCI Texarkana*, 2023 WL 2941477, at *7 (E.D. Tex. Feb. 14, 2023).

## Analysis

A. <u>Davis is not entitled to compassionate release</u>.

    1.   The Court lacks jurisdiction over Davis's claims for compassionate release.

Davis seeks a reduction in his sentence and moves for compassionate release under § 3582(c)(1)(A)(i). Pet. 1 (ECF No. 3). However, only the sentencing court has jurisdiction to consider a motion for compassionate release. 18 U.S.C. § 3582(c)(1)(A); *see also Himmel v. Upton*, 2019 WL 1112923, at *2 n.6 (N.D. Tex. Mar. 11, 2019) ("[A]ny motion for compassionate release under the newly amended provision of 18 U.S.C. § 3582(c)(1)(A) should be filed in the sentencing court."). Any district court other than the sentencing court lacks jurisdiction to consider the compassionate release motion. *Landazuri v. Hall*, 423 F. App'x 475, 476

(5th Cir. 2011) (per curiam) ("Because [the petitioner] did not file this [§ 3582(c)] challenge to his sentence in the court in which he was sentenced, the district court ruled correctly that it lacked jurisdiction to consider it.").

Davis is in custody pursuant to a conviction in an Army general court-martial. Thus, there is no still-existent sentencing court to address Davis's motion for compassionate release. *See Prost v. Anderson*, 636 F.3d 578, 588 (10th Cir. 2011) (recognizing the "evanescent nature of court martial proceedings"); *see also In re Kawai*, 2022 WL 1668374, at *3 (A.F. Ct. Crim. App. May 25, 2022) (recognizing "[g]eneral courts-martial are *ad hoc* proceedings") (quoting *Witham v. United States*, 355 F.3d 501, 505 (6th Cir. 2004)). Rather, "[g]eneral courts-martial are ad hoc proceedings, and they dissolve after the purpose for which they were convened has ended." *Witham*, 355 F.3d at 505.

Furthermore, military law "is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." *Schlesinger v. Councilman*, 420 U.S. 738, 746 (1975) (citing *Burns*, 346 U.S. at 140; *Parker v. Levy*, 417 U.S. 733, 744 (1974)). A federal court lacks the authority to exercise "appellate jurisdiction to supervise the administration of criminal justice in the military." *See id.*

To the extent Davis seeks a reduction in his sentence to time served, his request is not cognizable in a habeas petition. Rather, his claims are more properly addressed by the Army Clemency and Parole Board.

Also, Davis is not serving a federal criminal sentence. Instead, Davis is serving a sentence under the UCMJ. Section 3582 addresses the "[i]mposition of a sentence of imprisonment," but it does not apply to a sentence imposed under the UCMJ. *See* 18 U.S.C. § 3582(c) (providing "[t]he court may not modify a term of imprisonment once it has been imposed," making it clear the term "court" refers to the federal sentencing court, not a habeas court); *see also id.* § 3551(a) (an individual convicted of a crime under any federal statute must be sentenced in accordance with Title 18, Chapter 227, unless the statute specifically provides that Chapter 227 does not apply, or the law is an Act of Congress and is applicable exclusively in the District of Columbia or the UCMJ). Therefore, to the extent that Davis is seeking compassionate release under § 3582(c)(1)(A)(i), his petition should be dismissed for lack of jurisdiction.

2.  In the alternative, Davis has failed to demonstrate "extraordinary and compelling reasons" to warrant compassionate release.

Davis asserts that he is seeking "the same consideration and compassionate release that was granted" to three other inmates. Pet. 5-6 (ECF No. 3). Davis states that he filed a request for compassionate release with the warden at FCI Seagoville, but he did not receive a response within 30 days. *Id.* at 2; *see also* Pet. 15 (ECF No. 3) (request to the warden for compassionate release). Davis argues that he is entitled to compassionate release under § 3582(c)(1)(A)(i) based on the following considerations: (1)

7

he is sixty-one years old; (2) he is an insulin-dependent diabetic; (3) he has hypertension; (4) he is deemed obese; (5) he has disorders of the arteries and arterioles; (6) he suffers from neuropathy and high cholesterol; and (7) he has engaged in numerous rehabilitative efforts. Pet. 8-11 (ECF No. 3). Davis contends that his underlying health conditions make him more susceptible to getting COVID-19 while incarcerated. *Id.* at 9. He concludes that he is being denied proper medical treatment at FCI Seagoville, and this is yet another basis for the Court to grant his motion for compassionate release. *Id.* at 9 (citing *United States v. DeMartino*, Case No. 1:03cr265 (E.D.N.Y. 2022) (the court granted the compassionate release motion where the defendant was not receiving the proper ophthalmology care or surgery to prevent the loss of his eyesight)).

Under § 3582(c)(1)(A), as amended by the First Step Act (FSA), "[a] court, on a motion by the [Bureau of Prisons (BOP)] or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)); *see also Chambliss*, 948 F.3d at 693 n.1. But "[t]here is little developed guidance on what constitutes extraordinary and compelling reasons for a sentence reduction because neither § 3582 nor the Guidelines fully define or limit those reasons." *United*

*States v. Rodriguez*, 27 F.4th 1097, 1099-1100 (5th Cir. 2022) (citing *United States v. Shkambi*, 993 F.3d 388, 391-92 (5th Cir. 2021)).

In the commentary to U.S.S.G. § 1B1.13, the Sentencing Commission "'articulate[s] four categories of 'extraordinary and compelling reasons' that could warrant a sentence reduction: (A) medical conditions of the defendant; (B) age of the defendant; (C) family circumstances; and (D) other reasons identified by the [BOP's] Director." *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022) (quoting *Shkambi*, 993 F.3d at 391). "[Section] 1B1.13 is not an 'applicable policy statement' to compassionate release motions filed by prisoners, [so] 'neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582.'" *United States v. Cooper*, 996 F.3d 283, 288 (5th Cir. 2021) (quoting *Shkambi*, 993 F.3d at 392-93). But "[§] 1B1.13 may 'inform [ ]' the district court's analysis." *Jackson*, 27 F.4th at 1090 (quoting *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021)).

The fear of COVID-19, standing alone, does not provide an extraordinary and compelling reason to grant compassionate release. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a petitioner to release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's

statutory role, and its extensive and professional efforts to curtail the virus's spread."). But when an inmate has a medical condition that has been identified by the Centers for Disease Control and Prevention (CDC) as elevating his risk for becoming seriously ill from COVID-19, courts will consider that condition when deciding whether to grant a sentence reduction. On May 11, 2023, the CDC provided a list of risk factors that "can make you more likely to get sick if you get COVID-19." *See* Factors That Affect Your Risk of Getting Very Sick from COVID-19, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/risks-getting-very-sick.html (last visited Aug. 16, 2023).

"Now that COVID-19 vaccinations are being administered throughout the [BOP], compassionate release motions generally lack merit." *United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021). And "[c]ourts have held that, once vaccinated, the efficacy of the COVID-19 vaccines preclude the argument that a prisoner's susceptibility to the disease is extraordinary and compelling for purposes of § 3582(c)(1)(A)." *United States v. Gibson*, 2021 WL 3164176, at *2 (E.D. La. July 27, 2021). When an inmate suffers from a serious health condition, the availability of COVID-19 vaccines and treatment options reduce the risk caused by the serious health condition. *See United States v. Diaz*, 2023 WL 1879404, at *2 (5th Cir. Feb. 10, 2023) (per curiam) ("[W]e agree with the district court that the

10

availability of COVID-19 vaccines and treatment options decreases the risks associated with [the inmate-defendant's] condition.").

Even if Davis could demonstrate that his motion for compassionate release was appropriately filed under § 3582(c)(1)(A)(i), the motion fails on the merits for several reasons. First, Davis's COVID-19 related concerns fail to rise to the level of "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). Although not binding in the Fifth Circuit, the commentary to § 1B1.13 lists four categories of "extraordinary and compelling reasons": (A) the defendant's medical conditions; (B) the defendant's age; (C) the defendant's family circumstances; and (D) any other reasons as determined by the BOP director. U.S.S.G § 1B1.13 cmt. n.1 (A)-(D); *Jackson*, 27 F.4th at 1090 (citing *Shkambi*, 993 F.3d at 391); *see also* BOP Program Statement 5050.50              ¶¶              3-6,              *available*              at https://www.bop.gov/policy/progstat/5050_050_EN.pdf    (a    BOP regulation stating its own considerations of requests for compassionate release which are limited to those set forth by the Sentencing Commission: serious medical conditions, advanced age, and family circumstances). A medical condition is deemed sufficiently serious to warrant compassionate release where the defendant either has a terminal illness or a health condition that substantially diminishes the ability of the defendant to provide self-care. *Thompson*, 984 F.3d at 433 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)).

Here, Davis has provided a list of his health problems, as outlined by prison personnel. Reply 14-18 (ECF No. 14). He avers that he is an insulin-dependent diabetic, and the condition makes him more vulnerable to become seriously ill if he should contract COVID-19. Pet. 9 (ECF No. 3); *see also* Reply 6 (ECF No. 14). Davis also alleges that the BOP cannot protect him from COVID-19, as he has been diagnosed with COVID-19 on two occasions while incarcerated, and the second time he contracted COVID-19, it was "worse" than the first time. Pet. 9 (ECF No. 3). Davis has also provided an article from the Wall Street Journal entitled "Covid Reinfections Pose Some New Medical Risks." *Id.* at 18. But Davis fails to provide adequate documentation to show he has insulin-dependent diabetes that is sufficiently severe. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Nelson*, 2023 WL 4566254, at *2-*3 (N.D. Tex. July 17, 2023) (denying a motion for compassionate release where the defendant failed to provide the court with medical records to substantiate his medical conditions beyond a bare diagnosis); *United States v. Pearce*, 2022 WL 992738, at *3 (N.D. Tex. Apr. 1, 2022) (same); *United States v. Delgado*, 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020) (same). And Davis does not refer to any specific, ongoing health issues he suffers from due to his insulin-dependent diabetes. Davis's list of medical problems is not specific enough to constitute documentation showing his medical problems are sufficiently severe to rise to the level of "extraordinary and compelling reasons." *See* 18 U.S.C. §

3582(c)(1)(A)(i). And the Wall Street Journal article Davis has provided is neither relevant nor compelling information.

But even if Davis had shown "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i), the § 3553(a) factors do not support a decision to reduce his sentence. When the court finds "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i), those reasons must outweigh the § 3553(a) factors to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Sanchez-Chavez*, 2021 WL 5804279, at *3 (E.D. Tex. Dec. 7, 2021).

Under § 3553(a)(1), the Court considers "the nature and circumstances of the offense[s] and the history and characteristics of the defendant." With respect to this factor, Davis argues: (1) he is not a threat to society; (2) he is not a threat to another person; or (3) he does not pose a risk for recidivism. Reply 8 (ECF No. 14). But Davis was court-martialed for numerous serious criminal offenses, including the premeditated murder of his pregnant wife, and he was sentenced to life imprisonment. *See United States v. Martinez*, 832 F. App'x 906, 906 (5th Cir. 2021) (per curiam) (finding it was "not unreasonable for [a] court to place greater weight on the seriousness of [the] offense, including the fact that a dangerous weapon was involved in the criminal activity" when it denied compassionate release); *see also United States v. Brown*, 829 F. App'x 695, 696 (5th Cir. 2020) (finding "[i]t was not unreasonable for the district court to afford greater weight to

[the defendant's] history and characteristics, the amount of time served on his sentence, and the need to protect the public from further crimes by [the defendant] than the weight it placed upon his medical issues, the impact of the pandemic at [the prison] and the BOP's response to the pandemic"). Moreover, while incarcerated, Davis has sustained several disciplinary infractions, such as a finding by the Discipline and Adjustment Board that he stole property in January 1997 while at the U.S. Disciplinary Barracks. App. 58 (ECF No. 13). And following a hearing on February 4, 2022, the USPC concluded that Davis had "*seriously violated* the rules of [FCI Seagoville][,] and there [was] a reasonable possibility [he] [would] commit [another] Federal, State, or local crime if released." *Id.* (emphasis added). During Davis's incarceration, on at least three occasions, the USPC considered his requests for parole, and each time the USPC denied parole. *See* App. 58-59 (ECF No. 13) (Feb. 14, 2022 decision); App. 29-30 (ECF No. 13) (Aug. 9, 2016 decision); App. 26-27 (ECF No. 13) (May 10, 2016 decision). For these reasons, § 3553(a)(1) weighs against a sentence reduction in Davis's case.

Next, the Court considers "the need for the sentence imposed" "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Davis was sentenced to life imprisonment after he was found guilty of attempted premeditated murder, conspiracy to commit murder, premeditated murder,

arson, adultery, false statement, fraudulent enlistment, and false official record. App. 6-7, 9 (ECF No. 13). If the Court reduced Davis's sentence under § 3582(c)(1)(A)(i), his sentence would fail to reflect the seriousness of the criminal offenses for which he was convicted, promote respect for the law, and provide a just punishment for his numerous offenses.

Under § 3553(a)(2)(B), the Court considers "the need for the sentence imposed" "to afford adequate deterrence to criminal conduct." The sentence Davis serves for his gravely serious crimes needs to be sufficiently long to deter him from committing additional crimes in the future. If the Court reduced Davis's sentence now, it might not be sufficient to serve as a deterrence to him from committing future crimes.

Finally, the Court considers "the need for the sentence imposed" "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Considering the numerous crimes Davis committed, and the fact that several of the criminal offenses were gravely serious offenses, the public needs to be protected from him.

In sum, the § 3553(a) factors weigh in favor of denying Davis's motion for compassionate release. *See United States v. Samak*, 832 F. App'x 330, 331 (5th Cir. 2020) (per curiam) (affirming the district court and finding the defendant failed to demonstrate the district court abused its discretion when it denied his § 3582(c)(1)(A) motion after weighing the § 3553(a) factors); *see also United States v. Faulkner*, 2021 WL 5746529, at *3 (N.D. Tex. Dec.

2, 2021) (the district court weighed the relevant § 3553((a) factors and concluded the defendant was not entitled to a sentence reduction under § 3582(c)(1)(A)) (citing *Samak*, 832 F. App'x at 331).

For these reasons, the Court should deny Davis's request for compassionate release under § 3582(c)(1)(A)(i).

B.    To the extent Davis challenges the denial of parole through a habeas petition, his claim fails.

Next, Davis argues, under § 2241, that he has been "unjustly" denied parole. Pet. 12-13 (ECF No. 3); *see also* Reply 11-13 (ECF No. 14). Specifically, Davis contends that in 2002, the USPC granted him a presumptive parole date of May 21, 2016, but in a Notice of Action issued on May 10, 2016, the USPC rescinded the presumptive parole date. Pet. 12 (ECF No. 3). But the fact that Davis received a presumptive parole date does not entitle him to relief. A *presumptive* parole date is just that—not final, but rather contingent on other events taking place.

Under the pre-Sentencing Reform Act system, a prisoner receives an initial parole hearing within 120 days after his arrival at a federal institution, or as soon as practical, but when the prisoner has a minimum term of parole ineligibility of ten years or more, the initial hearing will be held nine months prior to the completion of the minimum term or as soon as practical. 28 C.F.R. § 2.12(a). After the initial parole hearing, the USPC will (1) set an effective parole date, (2) set a "presumptive release date," or (3) continue the

prisoner to a fifteen-year reconsideration hearing. *Id.* at § 2.12(b); *see also* 28 C.F.R. § 2.14(c) ("A fifteen year reconsideration hearing shall be a full reassessment of the case pursuant to the procedures at [28 C.F.R.] § 2.13."). After the initial parole hearing, a prisoner is entitled to periodic interim hearings. 28 C.F.R. § 2.14(a). The purpose of the interim hearings is to consider significant developments or changes in the prisoner's status that may have taken place after the initial hearing. *Id.* At the periodic interim hearings, the USPC can order no change in the prior decision, advance a presumptive release date, retard or rescind the presumptive parole date, or advance the date of the fifteen-year reconsideration hearing. *See id.* § 2.14(a)(2). A prisoner may appeal a USPC decision to the National Appeals Board. *Id.* § 2.26. On appeal, the National Appeals Board can affirm, reverse, or modify the USPC's decision, or order a new hearing. *Id.* § 2.26(b)(1).

"A presumptive parole date shall be contingent upon an affirmative finding by the [USPC] that the prisoner has a continued record of good conduct and a suitable release plan[.]"). *Id.* § 2.12(d). In addition, "release . . . shall be conditioned upon the completion of a satisfactory plan for parole supervision." *Id.* § 2.28(e). The presumptive release date does not become effective until the USPC approves the plan for parole supervision. *Alexander v. U.S. Parole Comm'n,* 514 F.3d 1083, 1088 (10th Cir. 2008) (citing 28 C.F.R. § 2.28(e)). "The purpose of a pre-release review shall be to determine whether the conditions of a presumptive release date by parole have been

satisfied. At least sixty days prior to a presumptive parole date, the case shall be reviewed on the record, including a current institutional progress report." 28 C.F.R. § 2.14(b)(1). "The term effective date of parole refers to a parole date that has been approved following an in-person hearing held within nine months of the date, or following a pre-release record review." *Id.* § 2.1(h). If the prisoner passes the pre-release screening, the "presumptive parole date" becomes an "effective date of parole." *Id.*; *see also Webber v. U.S. Parole Comm'n*, 2007 WL 2683993, at *5 n.10 (S.D. Miss. Aug. 7, 2007). And even then, "[a] grant of parole shall not be deemed to be operative until a certificate of parole has been delivered to the prisoner." 28 C.F.R. § 2.29(a); *see also Durham v. U.S. Parole Comm'n*, 306 F. App'x 225, 231 (6th Cir. 2009).

The USPC can consider "any evidence" existing at the time of sentencing, including evidence of more serious offenses that were dismissed pursuant to a plea agreement. *Page v. U.S. Parole Comm'n*, 651 F.2d 1083, 1086 (5th Cir. 1981) (citing *Bistram v. United States Parole Board*, 535 F.2d 329, 330 (5th Cir. 1976) (per curiam)). The USPC has broad discretion when making parole determinations, but a court's review of a parole decision is "quite circumscribed." *Van Etten v. United States Parole Comm'n*, 96 F.3d 144, 145 (5th Cir. 1996) (per curiam); *see also Stroud v. U.S. Parole Comm'n*, 668 F.2d 843, 846 (5th Cir.1982) ("So long as there are no violations of any required due process protection and the Commission has acted within its

authority, we will not usurp the [USPC's] position as established in the statutory scheme enacted by Congress."); *Elmore v. Chapa*, 2018 WL 1528796, at *3 (E.D. Tex. Feb. 15, 2018) ("Generally, the [USPC] is vested with absolute discretion in matters of parole."), *rec. accepted* 2018 WL 1525759 (E.D. Tex. Mar. 27, 2018) (citing *Maddox v. U.S. Parole Comm'n*, 821 F.2d 997, 998 (5th Cir. 1987)). A court reviews a USPC decision only to determine whether there is "some evidence" in the record to support the decision. *Simpson v. Ortiz*, 995 F.2d 606, 608 (5th Cir. 1993) (quoting *Maddox*, 821 F.2d at 1000); *see also Van Etten*, 96 F.3d at 145. "The [USPC]'s decisions involving the granting or denial of parole will not be disturbed absent flagrant, unwarranted or unauthorized action." *Elmore*, 2018 WL 1528796 at *3 (citing *Portley v. Grossman*, 444 U.S. 1311, 1312 (1980); *Stroud v. U.S. Parole Comm'n*, 668 F.2d 843, 846 (5th Cir. 1982)). A USPC determination is reversible by a court only if the USPC's decision is so arbitrary and capricious that it is beyond the USPC's discretion, or it violates the prisoner's constitutional rights. *Elmore*, 2018 WL 1528796, at *3 (citing *Brown v. Lundgren*, 528 F.2d 1050, 1054 (5th Cir. 1976)).

Here, Davis's parole potential has never graduated from the presumptive, contingency-ridden stage. Instead, on September 21, 2015, the USPC ordered a reconsideration of Davis's presumptive parole date. App. 25 (ECF No. 13). After his reconsideration hearing, the USPC rescinded its presumptive parole date of May 21, 2016, and ordered Davis to serve the

remainder of his life sentence. *Id.* at 26-28. Davis has not been granted a parole certificate by the USPC, and his parole has never been operative. *See* 28 C.F.R. § 2.29(a) ("A grant of parole shall not be deemed to be operative until a certificate of parole has been delivered to the prisoner."). And because Davis has not actually been released on parole, he cannot demonstrate that his due process rights were violated because he was not deprived of a liberty interest. *See Smith v. Gluch*, 880 F.2d 1322 (6th Cir. 1989) ("[A] federal prisoner is not vested with a right to parole until he receives a certificate of parole."). Therefore, Davis has no liberty interest in parole, and the Court should dismiss this claim.

     1.    The USPC had "some evidence" to support its decision to rescind Davis's presumptive parole date.

Davis contends that the USPC's decision to rescind his presumptive parole date was unjust because of the evidence it relied on in making its decision. Pet. 12 (ECF No. 3). Specifically, the USPC's decision to rescind his presumptive parole date was based on court-martial testimony provided by Private Jaouni, stating that Davis admitted to Private Jaouni that Davis murdered his wife. *Id.*

The USPC must find that a parole-eligible inmate is suitable for parole before the inmate is eligible for release. *See* 18 U.S.C. § 4206(a) (repealed); *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 391 (1980) ("Before releasing a prisoner on parole, the [USPC] must find, 'upon consideration of

the nature and circumstances of the offense and the history and characteristics of the prisoner,' that release 'would not depreciate the seriousness of his offense or promote disrespect for the law' and that it 'would not jeopardize the public welfare.'") (quoting 18 U.S.C. § 4206(a) (repealed)).

Here, the USPC directed that Davis's presumptive parole date be reviewed following the discovery of "new adverse information." App. 25 (ECF No. 13); *see also* 28 C.F.R. § 2.28(f). If the USPC had failed to order a reconsideration hearing under 28 C.F.R. § 2.28(f), the USPC would still have had to conduct a review under 28 C.F.R. § 2.14(b) before making Davis's presumptive parole date an effective parole date. Following Davis's reconsideration hearing on May 10, 2016, the USPC "rescinded [Davis's] presumptive parole date of May 21, 2016." App. 26 (ECF No. 3). The USPC provided the following explanation in support of its decision to rescind Davis's presumptive parole date:

> "[T]he Commission finds there is new and significant adverse information in your case which merits your previously established presumptive parole date rescinded and you be continued to the expiration of your sentence. This new adverse information includes the testimony of Private Jaouni at your trial, in which he stated you admitted to the murder of your wife. You have always maintained your wife's death was a suicide. Thus, the Commission finds this new information is significant because it not only directly contradicts your claim of innocence, but also demonstrates your lack or remorse, lack of empathy for the victims of your crimes, and your lack of acceptance of responsibility for your actions. In light of this new adverse information, the Commission now concludes parole is

> no longer compatible with the welfare of society and your
> discretionary release at this time would diminish the severity of
> your crimes and promote disrespect for the law.

*Id.* at 26-27 (the USPC issued an Amended Notice of Action on August 9, 2016, but it did not alter the reasons provided in the May 10 Notice of Action). The USPC's decision relied on evidence from Davis's court-martial trial record and hearings before the USPC. *Id.* at 9-20 (summarized version of the record of the trial). On appeal, the USPC's National Appeals Board denied Davis's administrative appeal and affirmed the decision and reasoning in the USPC's May 10 Notice of Action. *Id.* at 32-33.

The USPC's decision to rescind Davis's presumptive parole date was based on more than "some evidence" from the record to support the decision. *Simpson*, 995 F.2d at 608 (quoting *Maddox*, 821 F.2d at 1000); *see also Van Etten*, 96 F.3d at 145. The summarized record of Davis's trial and the information provided by the family of his murdered wife demonstrates the USPC found Davis was not suitable for parole under the standard set forth in 18 U.S.C. § 4206(a) (repealed). *See* App. 9-20 (ECF No. 13). Likewise, the USPC had a rational basis to rescind Davis's presumptive parole date following its conclusion that "parole [was] no longer compatible with the welfare of society and your discretionary release at this time would diminish the severity of your crimes and promote disrespect for the law." *Id.* at 27.

In sum, the USPC had "some evidence" to support its decision to rescind Davis's presumptive parole date, and the Court should deny Davis's claim that the USPC "unjustly" rescinded his presumptive parole date.

    2.    The USPC had sufficient evidence to decline to grant Davis's parole.

Next, Davis argues that the USPC changed its reasoning regarding why he was denied parole following a hearing on February 14, 2022. Pet. 12-13 (ECF No. 3). Davis contends that decision to deny him parole was based on a "new opinion" that relies primarily on facts the USPC had before it in 2022, when the USPC determined those facts failed to support the denial of his May 21, 2016 presumptive parole date. *Id*. at 12. Davis concludes that although the USPC found that he is likely to commit future offenses and was a danger to society, he believes his rehabilitative efforts are more compelling. *Id*. at 13; *see also* Pet. 42 (ECF No. 3) (male pattern risk scoring).

A federal prisoner's two-thirds date is calculated by the BOP. *Elmore, 2018 WL 1528796*, at *7. The BOP calculates a parole-eligible inmate's two-third's date by multiplying the number of days remaining on the prisoner's original sentence by two-thirds. *Rogers v. Feather*, 2013 WL 3243912, at *1 (D. Or. June 26, 2013); *see also* 18 U.S.C. § 4206(d) (repealed); 28 C.F.R. § 2.53(a). The USPC considers a parole eligible inmate for parole using the criteria set forth in 18 U.S.C. § 4206(d) (repealed), which provides:

> Any prisoner, serving a sentence of five years or longer, who is
> not earlier released under this section or any other applicable

provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however, that the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.*

18 U.S.C. § 4206(d) (repealed) (parole determination criteria) (emphasis in original and added); *see also* 28 C.F.R. § 2.53(a) (mandatory parole). The USPC held Davis's latest hearing in a manner consistent with the parole determination criteria set forth in § 4206(d) (repealed). App. 36 (ECF No. 3).

Following Davis's two-thirds hearing, the USPC denied him parole for the following reasons:

> The [USPC] finds you have seriously violated the rules of the institution and there is a reasonable probability you will commit any Federal, State, or local crime if released. Specifically, while at the US Disciplinary Barracks, you were found guilty by the Discipline and Adjustment Board for Possession of Stolen Property in January 1997, Funds Manipulation in December 1997 (involving your receipt of mail containing a money order addressed to another inmate and sending and receiving money from the same address), and for Communicating a Threat to another inmate in January 2000. Additionally, and more recently, you were found guilty by the Discipline Hearing Officer for engaging in a fight with another inmate on 2/14/2019. The [USPC] finds this conduct constitutes a serious violation of the rules of the institution because it involved a fight over money the other inmate owed to you. Loaning money or anything of value to another inmate is also a violation of institutional rules and the fact that violence ensued over the debt owed emphasizes why this type of conduct is considered a serious violation of the rules. Furthermore, the

> [USPC] finds the February 2019 Fight to be evidence of your current dangerousness to the public and demonstrates, even after more than 26 years in prison, you still can't avoid resorting to violence over money owed to you by another inmate. The [USPC] also notes your lack of acceptance of responsibility for your crimes, as well as your continued insistence your wife's death was due to suicide, despite the fact this theory was disproven in Court. The [USPC] also finds the sworn testimony of Private Jaouni at your trial directly contradicts your statements and also emphasizes your lack of acceptance of responsibility, your lack of remorse, and your lack of empathy toward the victims of your crimes you continue to stand convicted for nearly 30 years later. The [USPC] finds all of these factors, including the recentness of your serious violations of the rules of the institution, all creates a reasonable probability you will commit additional crimes if released at this time.

App. 58 (ECF No. 13). Davis administratively appealed the USPC's decision. *Id.* at 60-79. The USPC's National Appeals Board denied Davis's appeal and affirmed the USPC's decision. *Id.* at 80-82.

The USPC's decision to deny Davis parole was based primarily on his numerous disciplinary infractions. *See* App. 58 (ECF No. 13); *see also Elmore*, 2018 WL 1528796, at *3 ("In reaching a decision regarding parole, the [USPC] may use all relevant, available information.") (citing *Brown v. Lundgren*, 528 F.2d 1050, 1054 (5th Cir. 1976)). Specifically, the USPC determined that Davis failed to meet the criteria for parole under § 4206 (repealed) because the USPC found Davis "seriously" violated the rules of his institution, FCI Seagoville, with the following violations: (1) possessing stolen property, (2) manipulating funds while in custody, (3) communicating a threat, and (4) fighting while in BOP custody in 2019. App.

36-58 (ECF No. 13); *see also* Pet. 43-51 (ECF No. 3) (testimony from nine alleged witnesses to the 2019 fight Davis was involved in). The USPC further determined that there was "a reasonable probability [Davis would] commit additional crimes if released at this time." App. 58 (ECF No. 13). For these reasons, the Court should deny the claim that the USPC "unjustly" denied him parole at his last hearing where the USPC had "some evidence" in support of its decision. *See Simpson*, 995 F.2d at 608 (quoting *Maddox*, 821 F.2d at 1000); *see also Van Etten*, 96 F.3d at 145.

C.    To the extent Davis seeks relief on a petition for writ of *coram nobis*, his claim fails on the merits.

Last, Davis's petition includes several references to relief under "28 U.S.C. § 1651," which refers to a petition for a writ of error *coram nobis*. Pet. 1-2, 4, 7 (ECF No. 3). A writ of *coram nobis* is "an extraordinary remedy available to a petitioner no longer in custody who seeks to vacate a criminal conviction in circumstances where the petitioner can demonstrate civil disabilities as a consequence of the conviction[.]" *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004) (quoting *Jimenez v. Trominski*, 91 F.3d 767, 768 (5th Cir.1996)); *see also United States v. Hatten*, 167 F.3d 884, 887 n.6 (5th Cir. 1999) (citing *United States v. Castro*, 26 F.3d 557, 559 (5th Cir. 1994)). A petitioner must show that a fundamental error justifies vacating his conviction and that sound reasons exist for his delay in seeking earlier relief. *See United States v. Dyer*, 136 F.3d 417, 422 (5th Cir. 1998) (*coram*

*nobis* will issue only to correct errors of "the most fundamental character" and "sound reasons" must exist for failure to seek appropriate relief earlier) (quoting *United States v. Morgan*, 346 U.S. 502, 511-12 (1954)). A petitioner must also show that the error challenged is of a sufficient magnitude to justify the extraordinary relief sought—a "complete miscarriage of justice." *Jiminez*, 91 F.3d at 768 (citing *Castro*, 26 F.3d at 557); *see also Esogbue*, 357 F.3d at 535. A writ of *coram nobis* is only available when "no other remedy may be available." *See United States v. Marcello*, 876 F.2d 1147, 1154 (5th Cir. 1989); *see also Dyer*, 136 F.3d at 422. The Supreme Court has noted that it "is difficult to conceive of a situation in a federal criminal case today where [the writ] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996). The writ of *coram nobis* should "not be used as a substitute for appeal and should only be employed to correct errors 'of the most fundamental character.'" *Dyer*, 136 F.3d at 422 (quoting *Morgan*, 346 U.S. at 512); *see also Esogbue*, 357 F.3d at 535. A writ of *coram nobis* also cannot be used to "override" § 2255's statute of limitations or to "circumvent" the restrictions it imposes on unauthorized, successive motions. *Frasier v. United States*, 343 F. App'x 985, 986 (5th Cir. 2009) (per curiam). "In addition, a petitioner bears the considerable burden of overcoming the presumption that previous judicial proceedings were correct." *Dyer*, 136 F.3d at 422.

The requisite elements for *coram nobis* relief are: (1) the ground for relief involves a fundamental error; (2) no other judicial remedy is available; (3) valid reasons exist to excuse the petitioner's failure to seek relief on these issues in earlier proceedings; and (4) the petitioner is suffering or is threatened with adverse collateral consequences because of his conviction. *Langston v. United States*, 2016 WL 800210, at *14 (N.D. Miss. Feb. 29, 2016).

As discussed, Davis is serving a life sentence in the BOP, and he seeks release from incarceration through compassionate release. Davis is presently *in custody* at FCI Seagoville. https://www.bop.gov/inmateloc/ (last visited Nov. 9, 2023) (showing Davis is serving a life sentence at FCI Seagoville). Because Davis is in custody, he is not entitled to *coram nobis* relief. *See Esogbue*, 357 F.3d at 534 (quoting *Jiminez*, 357 F.3d at 768); *see also Hatten*, 167 F.3d at 887 n.6 (citing *Castro*, 26 F.3d at 559).

## Conclusion

The Court should dismiss or deny Davis's petition.

Signed November 15, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

28

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996).*